UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BIRGITT MORRIS,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>        Defendants. | No. ED CV 08-71-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on January 18, 2008, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on February 6, 2008, and February 19, 2008. The parties filed a Joint Stipulation on November 11, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on April 6, 1972. [Administrative Record ("AR") at 54, 70, 401.] She has a high school education [AR at 67, 401, 444], and has past relevant work experience as, among other things, a cashier, bartender, and mental health technician. [AR at 62, 73-80, 401.]

On January 27, 2003, plaintiff protectively filed her application for Disability Insurance Benefits, alleging that she has been unable to work since November 15, 2002, due to generalized anxiety disorder, severe depression, bipolar disorder, panic attacks, thyroid disease, an ovarian cyst, and severe headaches. [AR at 53, 54-56, 61, 89.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 25-42.] A hearing was held on February 3, 2005, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 392-428.] Plaintiff's husband also testified. [AR at 422-26.] On April 8, 2005, the ALJ determined that plaintiff was not disabled. [AR at 7-16.] Plaintiff requested review of the hearing decision. [AR at 17.] The Appeals Council denied plaintiff's request for review on June 2, 2005. [AR at 4-6.]

Plaintiff then filed an action in District Court, Case No. CV 05-675-PLA, challenging the Commissioner's decision. On September 13, 2006, the Court remanded the matter with instructions to consider the testimony of plaintiff's husband. [AR at 489-98.] On October 17, 2006, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings consistent with the Court's 2006 Order. [AR at 486-88.] On January 23, 2007, a second hearing was held, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 704-29.] A medical expert also testified. [AR at 711-12, 720-28.] A supplemental hearing was held on April 25, 2007, at which time plaintiff again appeared with counsel and testified on her own behalf. [AR at 665-703.] A medical expert, vocational expert, and plaintiff's husband also testified. [AR at 669-702.] On September 25, 2007, the ALJ determined that plaintiff was not disabled. [AR at 429-45.] This action followed.

/
/

# III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

# IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.[1] [AR at 434.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: "gastrointestinal reflux disorder; status post multiple abdominal surgeries with residual pain; obesity; bipolar disorder under 12.04; and anxiety, under 12.06 (citation omitted)." [Id.] At step three, the ALJ determined that plaintiff's

---

[1] The ALJ also determined that plaintiff "meets the insured status requirements of the Social Security Act through September 30, 2003." [AR at 434.]

impairments do not meet or equal any of the impairments in the Listing. [AR at 434-35.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work.[3] Specifically, the ALJ determined that plaintiff "can occasionally lift and/or carry 20 pounds and frequently 10 pounds; she can push and pull within the weight restrictions defined [in the decision]; she can stand and/or walk two hours out of an eight-hour work day and sit for eight hours; she must have ready access to a bathroom; she is precluded from balancing, ladder climbing, using scaffolds or climbing ropes; she is limited to occasional bending and stooping; she is precluded from working at unprotected heights; she should work in an object oriented environment requiring no hypervigilence; she must have flexible breaks, but does not need extra breaks; [s]he should not work with the public; she is precluded from work requiring high production, high quotas, assembly line work and stressful jobs; she can have occasional contact with supervisors and co-workers; and she should never be required to supervise others." [AR at 435-36.] At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work. [AR at 444.] At step five, the ALJ found, based on the vocational expert's testimony, that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." [AR at 444-45.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 445.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to properly consider: (1) the testimony regarding plaintiff's abdominal pain; (2) the side effects of plaintiff's medications pursuant to Social Security

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Ruling[4] 96-7p; and (3) the combined effect of plaintiff's impairments in determining whether her impairments equaled a listed impairment. Joint Stipulation ("Joint Stip.") at 3. As set forth below, the Court respectfully disagrees with plaintiff, and affirms the ALJ's decision.

**A.    ABDOMINAL PAIN**

Plaintiff contends that the ALJ failed to properly credit the testimony regarding her abdominal pain. Joint Stip. at 3. Specifically, plaintiff asserts that the ALJ improperly considered the testimony of plaintiff and plaintiff's husband. Joint Stip. at 3-9.

1.    Testimony of Plaintiff

Whenever an ALJ discredits a claimant's testimony, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting it). The ALJ can reject a claimant's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "It is not sufficient for the ALJ to make only general

---

[4] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

findings." Dodrill, 12 F.3d at 918. Absent evidence showing that the plaintiff is malingering, the ALJ must state which testimony is not credible and identify the evidence that undermines the claimant's complaints. See id.; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting Lester, 81 F.3d at 834). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

In the decision, the ALJ considered plaintiff's testimony, her responses to the daily activities questionnaire, and comments in the treatment notes. [AR at 437.] The ALJ discounted plaintiff's subjective complaints of pain based on the medical evidence, the testimony of the medical expert, and the inconsistencies in her testimony concerning her daily activities. [AR at 437-43.] As discussed below, the Court rejects plaintiff's contention that the ALJ failed to properly evaluate her credibility.

While it cannot provide the only basis to reject a claimant's credibility, the ALJ here properly considered the medical evidence in evaluating plaintiff's credibility. "The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints." Luna v. Bowen, 834 F.2d 161, 164-65 (10th Cir. 1987) (quoting Polaski v. Heckler, 751 F.2d 943, 948 (8th Cir. 1984), vacated and remanded on other grounds, 476 U.S. 1167, 106 S. Ct. 2885, 90 L. Ed. 2d 974 (1986)); see also Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991) (an "adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.") (emphasis added); Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997) ("because a claimant need not present clinical or diagnostic evidence to support the severity of his pain . . . a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (while medical evidence alone cannot discredit testimony as to pain, it is one factor which the ALJ is permitted to consider).

Here, after considering the evidence of record, the ALJ found that "[plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [AR at 438.] The ALJ concluded that the "treatment records prior to the date last insured are conservative and minimal." [AR at 438.] Specifically, the ALJ indicated that there are no opinions from a treating or examining medical source about plaintiff's RFC or any statements of disability or restriction from a treating source prior to the date last insured. [AR at 440.] See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (an ALJ may rely on a claimant's conservative treatment regimen to reject a claimant's testimony of disabling limitations or disabling pain); see also Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (that the claimant received only conservative treatment for back injury is a clear and convincing reason for disregarding testimony that the claimant is disabled). The ALJ also concluded that the "medical records after the date last insured do not support that [plaintiff] had a disabling condition prior to September 30, 2003." [AR at 440.]

The ALJ's conclusions are supported by the record. Prior to the date last insured, the treatment records are sparse. [AR at 236-54.] Although plaintiff was assessed with left lower quadrant abdominal pains and a history of endometriosis and chronic pain problems prior to the date last insured [AR at 242, 253-54], plaintiff received minimal treatment based on those assessments prior to the expiration of her insured status. [AR at 236-54.] Further, there is no indication in the record that those assessments were disabling as of September 30, 2003. [Id.] Moreover, none of the treatment records after the date last insured demonstrate a disability prior to the expiration of her insured status. [See, e.g., AR at 276-78, 292-318, 373, 501-02.] In fact, the most recent treatment record noted plaintiff's pain as "better/good." [AR at 568.] Regardless, even if the records showed that plaintiff's condition worsened after the date last insured, such evidence would be irrelevant. See Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1461 & n.4 (9th Cir. 1995) (observing that a "long line of cases" has established that a claimant must establish disability as of the date last insured, and that "any deterioration in her condition subsequent to that time is, of course, irrelevant").

Furthermore, in finding plaintiff not entirely credible, the ALJ properly relied on the opinion of the testifying medical expert, Dr. Samuel Landau. [AR at 442-43.] Dr. Landau testified that plaintiff has the following impairments: chronic abdominal and pelvic pain, post operative multiple abdominal operations, treated hypothyroidism, overweight to obesity, and psychiatric diagnoses. [AR at 670.] He limited plaintiff to standing and walking for four hours out of eight, sitting for six hours out of eight with normal breaks, and lifting and carrying 10 pounds on a frequent basis and 20 pounds on an occasional basis. [AR at 672.] He further found that plaintiff can occasionally stoop and bend, and can climb stairs, but cannot climb ladders, work at heights, or balance. [AR at 672.] Dr. Landau testified that although plaintiff's pain is subjective and there is no way to quantify the level of pain that plaintiff has from her abdominal problems, plaintiff's subjective complaints of pain "are somewhat out of proportion to the abnormalities found in the record." [AR at 674.] The ALJ gave Dr. Landau's opinion "great weight" because "it gives [plaintiff] every benefit of the doubt and is consistent with the objective medical records." [AR at 443.] See 20 C.F.R. §§ 404.1529(a), 416.929(a) (ALJ may consider opinions of nontreating sources in evaluating claimant's subjective complaints of pain); see also Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").

Although the lack of objective medical evidence does not in and of itself suffice as a valid reason to reject plaintiff's credibility, the ALJ did not rely on the medical evidence alone to discredit plaintiff's subjective complaints of pain. The ALJ also discredited plaintiff's allegations of disabling pain based on her inconsistent statements regarding her daily activities. In weighing plaintiff's credibility, the ALJ may consider "inconsistencies either in [her] testimony or between [her] testimony and [her] conduct." See Light, 119 F.3d at 792; see also Thomas, 278 F.3d at 958-59 (ALJ may consider inconsistencies between claimant's testimony and claimant's daily activities when weighing claimant's credibility); Smolen, 80 F.3d at 1283-84 (an ALJ can consider inconsistent statements made by a claimant in evaluating credibility); Fair, 885 F.2d at 603-04 (ALJ may properly rely on daily activities inconsistent with claim of disabling pain); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (daily activities inconsistent with total disability undermine

subjective testimony of disabling pain). Here, the ALJ found that plaintiff's testimony "is not consistent with statements made in her activity questionnaire."[5] [AR at 437.] Specifically, the ALJ noted that plaintiff in her daily activities questionnaire "admitted that she cared for her children, did chores, did most of the cooking, [and] drove herself to necessary places like Starbucks, Wal-Mart and the gas station." [95-97, 437.] See Rollins, 261 F.3d at 857 (daily activities such as caring for young children and performing household chores undermined claims of totally disabling pain); see also Thomas, 278 F.3d at 958-59 (the ALJ properly considered performing household chores as evidence weighing against plaintiff's credibility on her claim that she was in disabling pain); Fair, 885 F.2d at 603-04 ("if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working"); Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989) (although evidence that claimant can engage in housework not determinative of disability, plaintiff's overall activity level can be taken into account to show lack of disability); see, e.g., Jerome v. Astrue, 2009 WL 650614, *6 (C.D. Cal. Mar. 6, 2009) (proper for ALJ to rely on claimant's daily activities, including completing household chores, shopping for food, traveling via foot or car, and caring for children, to support his adverse credibility determination). The ALJ further found that plaintiff appeared to minimize her activities and exaggerate her symptoms during the hearing on January 23, 2007. [AR at 437.] See Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999) (no error where ALJ bases his decision partially on personal observations made of claimant at the hearing). Thus, the ALJ's conclusion that plaintiff "is only

---

[5] In the daily activities questionnaire dated November 23, 2003, plaintiff indicated, among other things, that she performs "light duties" on an average day with rest, is able to care for her own personal needs without assistance, prepares and cooks most of her meals, goes shopping with her husband, does laundry although it hurts her back to bend and carry the laundry basket, does light cleaning, drives a car, and takes care of her dependent children. [AR at 95-98, 437.] At the hearing on January 23, 2007, plaintiff testified that she did not really do chores around the house, but later testified that she cleaned the toilet several times a week, bathed her daughter on occasion, and cooked once in a while. [AR at 668, 716-17.]

credible to the extent that she can do the jobs stated [in the decision] through the date last insured. . ." was proper. [AR at 437.]

The ALJ did not err in his consideration of plaintiff's subjective testimony as he provided clear and convincing reasons for rejecting plaintiff's credibility. The ALJ employed ordinary techniques of credibility determination to conclude that plaintiff's subjective complaints were not entirely credible, and thus his conclusion is entitled to deference. See Fair, 885 F.2d at 604 n.5; see also 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p.

### 2. Testimony of Plaintiff's Husband

Judges may, "in addition to evidence from the acceptable medical sources . . . , also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [her] ability to work." 20 C.F.R. §§ 404.1513(d), 416.1913(d). Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. See 20 C.F.R. § 404.1513(d)(4), 416.1913(d)(4). Thus, lay witness testimony by family members who have the opportunity to observe plaintiff on a daily basis "constitutes qualified evidence" that the ALJ must consider. Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see Dodrill, 12 F.3d at 919 ("[a]n eyewitness can often tell whether someone is suffering or merely malingering. . . this is particularly true of witnesses who view the claimant on a daily basis . . ."). To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so. Dodrill, 12 F.3d at 919.

In the third party function report, plaintiff's husband indicated that plaintiff is able to feed, dress, and bathe their two children, prepare meals daily, do light sweeping and mopping, clean counters and bathrooms, walk, drive a car, shop, and manage her personal care. [AR at 101-04.] At the hearing on April 25, 2007, plaintiff's husband testified that plaintiff suffered from "strong abdominal pain," which precluded her from lifting a lot of things. [AR at 684.] He also testified that plaintiff is "constantly on pain relief because of the pain in her stomach," but that surgery was not recommended. [AR at 684-85.] Plaintiff's husband further testified that, prior to September 30,

2003, plaintiff cared for their two minor children without assistance, but stated that "it was very hard on her." [AR at 692.]

In the decision, the ALJ discussed the testimony provided by plaintiff's husband at the supplemental hearing on April 25, 2007. [AR at 437-38.] Based on his consideration of the testimony and the third party function report provided by plaintiff's husband, the ALJ concluded that the testimony of plaintiff's husband "does not support a disabling condition prior to the date last insured and is only credible to the extent that [plaintiff] could perform the activities described [in the decision] through September 30, 2003." [AR at 438.]

The ALJ discredited the testimony of plaintiff's husband insofar as it was inconsistent with plaintiff's ability to perform light work. Indeed, the statements of plaintiff's husband suggest that, prior to her date last insured, plaintiff was not disabled. Specifically, the ALJ noted that plaintiff's husband "testified that [plaintiff] suffered from a lot of stomach pain from endometriosis, but surgery was not recommended because it only caused more problems." [AR at 438.] The ALJ further noted that plaintiff's husband testified that prior to September 30, 2003, plaintiff cared for their two children without assistance despite it being very hard on her. [AR at 438.] See, e.g., Vittatoe v. Astrue, 2009 WL 122569, *10 (C.D. Cal Jan. 16, 2009) (claimant's ability to care for her grandchild and her own children is not consistent with a disabling condition); Roberson v. Astrue, 481 F.3d 1020, 1025 (8th Cir. 2007) (caring for eleven-year-old child, driving, fixing simple meals, doing housework, and shopping for groceries held to be "extensive daily activities" that did not support claimant's alleged inability to work); Blowers v. Astrue, 2008 WL 398464, *12 (N.D.N.Y. Feb. 12, 2008) (ALJ's reliance on a claimant's ability to care for children, attend appointments, perform housework, and use public transportation, was not error). The ALJ's rejection of the testimony of plaintiff's husband because it did not support plaintiff's allegations of disabling pain was sufficient.

The ALJ provided legally sufficient reasons for discrediting the testimony of plaintiff and plaintiff's husband regarding plaintiff's subjective complaints of pain. Thus, the ALJ's credibility findings are entitled to deference. See Morgan, 169 F.3d 595, 599 (9th Cir. 1999) ("questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary"); see

also Fair, 885 F.2d at 604 (where the ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record," reviewing courts must not engage in second guessing). Remand is not warranted on this issue.

**B.    SIDE EFFECTS OF MEDICATIONS**

Plaintiff contends that the ALJ did not properly consider the side effects from her medications as required by SSR 96-7p. Joint Stip. at 14-16.

Although the side effects of any medication taken by a claimant to alleviate her pain or other symptoms is a factor relevant to an ALJ's disability determination (see 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); see also SSR 96-7p), the claimant bears the burden of proving that the claimed side effects of her medications are severe enough to impair her ability to work. See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (the claimant bears the burden of producing clinical evidence showing that the use of narcotic medication impaired her ability to work). Side effects of medications not severe enough to interfere with a claimant's ability to work are properly excluded from consideration. See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) ("[t]here were passing mentions of the side effects of [the claimant's] medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [the claimant's] ability to work.").

Here, plaintiff reported headaches and sleepiness as side effects of her medications. [AR at 380-82, 559.] Plaintiff testified at the hearing on February 3, 2005, in response to the ALJ's question regarding the side effects of her medications, that she experienced sleepiness, but was not sure if it was caused by her medications or an illness. [AR at 417-18.] In the "Claimant's Statement When Request for Hearing is Filed and the Issue is Disability," plaintiff indicated that her medications made her feel like she needs to be alone.[6] [AR at 115.] She also indicated that

---

[6]   It is noted that the ALJ's RFC assessment of plaintiff and the hypothetical posed to the vocational expert at the April 25, 2007, hearing included a restriction of no contact with the public. [AR at 435, 700.]

13

she was prescribed Methadone, which she can only take when her husband is present as it makes her "very loopy" and she has "a hard time making responsible decisions." [AR at 115-16.]

These passing references to side effects from medications are inadequate to establish a disabling condition because there is nothing in the record to show that plaintiff's purported side effects resulted in functional limitations that were severe enough to interfere with her ability to work.[7] See Osenbrock, 240 F.3d at 1164 (passing mentions of side effects without documentation of effects of sufficient severity to interfere with the ability to work are inadequate). Rather, the only evidence regarding plaintiff's alleged side effects is her own statements to the Social Security Administration and her physicians, and her testimony at the hearing. See Thomas, 278 F.3d at 960 (ALJ properly excluded claimant's assertion that pain medication caused dizziness and difficulties in concentration because "[t]he only evidence regarding [side effects were the claimant's] own statements to her doctor and her testimony at the hearing"); see, e.g., Moore v. Astrue, 2009 WL 497503, *7 (C.D. Cal. Feb. 26, 2009) ("[r]eferences to side effects made only to the social security administration are not alone evidence that the side effects of the medications are severe enough to affect [the claimant's] ability to work."). Notably, several of the treatment records indicate that plaintiff did not have any side effects at all from her medications. [AR at 542-47.] Also, plaintiff did not identify any debilitating medication side effects in her Disability Report dated January 1, 2003. [AR at 66.] Thus, plaintiff did not meet her burden of demonstrating that her use of medications impaired her ability to work. See Miller, 770 F.2d at 849. As such, the ALJ did not err in concluding that "[t]he light work restrictions take into consideration [plaintiff's]

---

[7] As support for her claim regarding the ALJ's failure to consider the side effects of her medications, plaintiff refers to a medical guide that identifies the common side effects from narcotic analgesics (including Fentanyl, Vicodin, Percocet, Oxycontin and MS Contin) as dizziness, drowsiness, tiredness, headache, lightheadedness, nausea or vomiting, stomach cramps and overexcitement. Joint Stip. at 16. However, a listing of the common side effects from particular medications is inadequate to establish that plaintiff experiences those side effects with sufficient severity to interfere with her ability to work. See, e.g., Olley v. Astrue, 2008 WL 4554883, *6 (C.D. Cal. Oct. 9, 2008) ("[t]he mere fact that a claimant takes a certain medication, in and of itself, is not evidence that the claimant also experiences any one of the myriad possible side effects from that medication. Further, a simple recitation of potential side effects from a particular medication does not establish that *this* claimant experiences *these* side effects, which prevents him or her from working for *these* reasons.") (emphasis in original).

subjective complaints of pain and any side effects from medications" without further consideration of the alleged side effects of plaintiff's medications. [AR at 443.] Accordingly, remand is not warranted on this issue.

**C.   COMBINED EFFECT OF IMPAIRMENTS**

Plaintiff contends that the ALJ failed to properly consider the combined effects of plaintiff's physical and mental impairments in determining whether her impairments equaled a listed impairment. Joint Stip. at 19-21. Plaintiff further contends that the ALJ improperly relied on Dr. Landau's testimony that plaintiff's physical and mental impairments do not meet or equal a listing. Id.

At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the Listing. See 20 C.F.R. §§ 404.1520(d), 416.920(d). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) (citing Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)). In order for a claimant's impairment or combination of impairments to meet the requirements of a listing, all of the criteria of that listing and the duration requirement must be satisfied. See 20 C.F.R. §§ 404.1525(c)(1)-(3); 416.925(c)(1)-(3); see also SSR 83-19 ("[a]n impairment 'meets' a listed condition in the Listing of Impairments only when it manifests the specific findings described in the set of medical criteria for that listed impairment."). To equal a listed impairment, a claimant's impairment or combination of impairments must "at least equal in severity and duration" the criteria of a listed impairment. See 20 C.F.R. §§ 404.1526(a), 416.926(a); see also SSR 83-19 (a claimant's impairment is "equivalent" to a listing only if her symptoms, signs, and laboratory findings are "at least equivalent in severity" to the criteria for the listed impairment most like the claimant's impairment). A claimant bears the burden of proving that he or she has an impairment that meets or equals the criteria of a listed impairment. See Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) ("[a]n ALJ is not required to discuss the

combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.") (citation omitted); see also Lewis, 236 F.3d at 514 (ALJ's failure to consider equivalence was not reversible error where the claimant offered no theory, plausible or otherwise, as to how his impairments combined to equal a listed impairment).

Evening assuming that plaintiff presented evidence in an effort to establish equivalency (although it does not appear that plaintiff did so), the ALJ nonetheless properly considered the combined effects of plaintiff's impairments in determining that her impairments do not equal a listed impairment.[8] In the decision, the ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ," as plaintiff does not have the severity of symptoms required to meet or equal a listed impairment. [AR at 434-35.] The ALJ determined that plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of 12.04." [Id.] Further, the ALJ noted that Dr. Landau testified at the hearing on April 25, 2007, based on his review of the medical records, that plaintiff's severe physical and mental impairments do not individually or in combination meet or equal a listed impairment. [AR at 442, 670-71.] The ALJ specifically elicited testimony and clarification from Dr. Landau as to listings 1.08 and 5.03. [AR at 671-72.] Dr. Landau testified that plaintiff's impairments do not meet or equal either of those specific listings. [Id.] The ALJ gave Dr. Landau's opinion "great weight." [AR at 443.] The ALJ's reliance on Dr. Landau's opinion was appropriate. While the ALJ "is responsible for deciding the ultimate legal question whether a listing is met or equaled," the ALJ may give weight to the opinion of a medical expert in determining the issue of equivalence. See 20 C.F.R. §§ 404.1526(b)-(e), 416.926(b)-(e); see also SSR 96-6p; Lester, 81 F.3d at 830-31 (the opinion of a nonexamining physician may serve as substantial evidence when it is consistent with other independent evidence in the record).

---

[8] Plaintiff does not contend that the ALJ failed to properly consider the combined effects of plaintiff's physical and mental impairments in determining whether her impairments met a listed impairment. Joint Stip. at 19-21. As such, the Court focuses only on the ALJ's equivalence determination.

16

Moreover, plaintiff's counsel cross-examined Dr. Landau at the hearing on April 25, 2007, but did not challenge his testimony with respect to whether plaintiff's combined impairments equaled a listed impairment. [AR at 673-75.] See Andrews, 53 F.3d at 1042 ("[b]ecause [the nonexamining psychologist] was subject to cross-examination, the ALJ could legitimately credit her testimony.") (citation omitted); see also Torres v. Secretary of Health and Human Services, 870 F.2d 742, 744 (1st Cir. 1989) (greater weight may be given to opinion of nonexamining expert who testifies at hearing subject to cross-examination). Thus, the ALJ did not err in his consideration of the combined effects of plaintiff's impairments in determining whether plaintiff equaled a listed impairment. Remand is not warranted on this issue.

**VI.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

DATED: May 12, 2009

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE